IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MADELYN THOMPSON,

        Plaintiff,

vs.                                                                                    Civ. No. 04-875 MV/RHS

CHAVES COUNTY GOVERNMENT,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant=s Motion for Summary Judgment, filed September 12, 2005, **[Doc. No.  44]**.  The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well- taken and will be **GRANTED**.

## FACTUAL BACKGROUND[1]

In 1994, Plaintiff was hired as a solid waste site operator by the Chaves County Road Department.  As a solid waste site operator, Plaintiff supervised the dumping of waste at Chaves County's solid waste dumping sites.  Plaintiff's job duties included collecting dumping fees and ensuring that only approved waste was dumped at the site.  At the time, Chaves County operated two solid waste sites, known as the South Site and the North Site.  For most of Plaintiff's employment, she worked at the South Site and Gayland Gallagher, a male, worked at the North Site.

---

[1] On Defendant's motion for summary Judgment, the facts must be taken in the light most favorable to Plaintiff; accordingly, in the recitation of the facts, the Court will describe the facts as supported by the Plaintiff's evidence.

In 1997, Plaintiff filed an internal grievance against a co-worker, Alonzo Acosta, alleging favoritism and gender discrimination.  During the investigation of this internal grievance, which was ultimately determined to be without merit by the EEO investigator, Acosta expressed a desire to retaliate against Plaintiff for filing the grievance.[2]  Both the EEO investigator and Roger Cooper, then the Chavez County Road Superintendent, met with Acosta and counseled him that retaliation against Plaintiff was inappropriate and would not be tolerated.

Nearly six years later, in January 2003, Acosta was promoted to Road Operations Director, a supervisory position in Plaintiff's direct chain of command.[3]  Plaintiff alleges that beginning in May of 2003, she began to suffer retaliation, including "unfair supervision, false allegations, threats, and general harassment."  Plaintiff asserts that she was forced to strictly adhere to County dumping policies and procedures and was closely supervised while Gallagher was not required to adhere to the policies and procedures as closely and was not subjected to the same level of scrutiny.

On July 31, 2003, Plaintiff filed a Charge of Discrimination with the EEOC alleging that she was being retaliated against as a result of filing the 1997 internal grievance.  This charge was resolved by a settlement agreement executed by the parties on September 24, 2003 ("Settlement Agreement").  As part of the Settlement Agreement, Plaintiff agreed not to bring any charges

---

[2]  The report from the EEO investigator stated that "[d]uring my interview with Alonzo Acosta regarding these allegations he became angry and stated he wanted retaliation against Ms. Thompson for filing the grievance against him.  I informed Mr. Acosta that would be inappropriate action and that no retaliation was to take place on or off the job.  This should be followed up by management."

[3]  In May 2003, Plaintiff's chain of command was Fleet Maintenance Supervisor (Rusty Gray), Road Operations Director (Alonzo Acosta), Public Works Director (Roger Cooper), and County Manager (Stanton Riggs).

under Title VII based on the allegations in her July 2003 Charge of Discrimination.

On December 10, 2003,  Rusty Gray, Plaintiff's immediate supervisor, gave Plaintiff a verbal warning for not observing customers unload waste into the dumpsters at the waste site. Gray alleged that when he gave her the warning, Plaintiff became irate, raised her voice, and stated that she would not observe customers while they were dumping waste.  On or about December 18, 2003, Plaintiff was given notice that a predisciplinary hearing would be held on December 22, 2003, regarding the December 10, 2003 incident and that discipline was being contemplated for "noncooperation with fellow employees or other personal conduct which substantially interferes with the performance of your or another employee's conduct and insubordination."[4]

On December 22, 2003, Cooper, now the Chaves County Public Works Director, held a hearing to determine if Plaintiff's behavior on December 10, 2003, was a violation of Chaves County Personnel Policy.  At the meeting, Gray presented a memo detailing his version of the incident.  Sid Preston, a Chaves County employee who was in Gray's office at the time of the incident, submitted a memo corroborating Gray's observations of Plaintiff's behavior.  At the hearing Plaintiff declined to make any statements about the incident, repeatedly replying "no comment" to Cooper's inquiries.  Following the hearing, Cooper determined that based on the uncontested and corroborated evidence before him, Plaintiff's behavior on the morning of December 10, 2003, was a violation of Chaves County Personnel Policy.  Considering the fact that this was Plaintiff's third insubordination violation, Cooper imposed a three day suspension,

---

[4]  A copy of this notice was not provided to the Court so the Court's discussion of the contents of the notice is limited to the portions of the notice quoted in depositions.  The portion quoted above was read at Plaintiff's deposition.  *See* Plaintiff's Deposition at p. 79.

effective January 14-16, 2004.  Plaintiff did not appeal this suspension.

Instead, on January 30, 2004, Plaintiff filed another Charge of Discrimination with the EEOC asserting that the three-day suspension was in retaliation for her filing the previous charge with the EEOC.  In her charge, Plaintiff stated that "[s]ince filing a complaint of Discrimination with the EEOC, the Respondent has written me up and suspended me for three days" and "I believe [I] have been retaliated against in violation of Title VII of the Civil Rights Act of 1964."[5]

In March 2004, a female co-worker filed a complaint regarding Plaintiff's behavior toward her.  This complaint was investigated by Sheila Nunez, Human Resources Specialist, who concluded that Plaintiff's rudeness and angry outbursts to co-workers were inappropriate and a violation of County policy.  After a hearing, Stanton Riggs, Chavez County Manager, decided that Plaintiff would receive a one-day suspension and a referral to the Employee Assistance Program.  Plaintiff appealed this decision.  The appeal was heard by a neutral third party who upheld the discipline.

On May 6, 2004, Plaintiff and Gallagher met with Cooper and Riggs.  In this meeting, Plaintiff and Gallagher were informed that their positions as solid waste operators were likely to be eliminated.  Plaintiff and Gallagher were encouraged to look for other available County positions and were told that they would be given hiring preference for County jobs for six months after the layoff.  Cooper discussed potential job openings at the County and specifically mentioned that a Road Maintenance II employee might not be returning from medical leave, resulting in the promotion of a Road Maintenance I person and the consequent availability of a Road

---

[5]  Plaintiff apparently signed and submitted an affidavit with this charge but the affidavit has not been submitted to the Court.

Maintenance I position.  Both Plaintiff and Gallagher knew that Road Maintenance I positions required a Commercial Drivers License ("CDL").

Six days later, Plaintiff and Gallagher were given written notice that the decision to eliminate their positions was final and would be effective June 13, 2004.[6]  The notice stated that they could transfer to another available County position for which they qualified by applying with the human resources department.

After the May 6, 2004 meeting, Gallagher, who had prior experience operating heavy equipment, obtained his CDL in order to qualify for a Road Maintenance I position.  He also spoke with the County's Human Resources Director as well as with supervisors at the Detention Center, Maintenance Department, and Public Works Department about possible openings for which he was qualified.

At some point prior to the June 13, 2004 layoff date, the Road Maintenance I position mentioned by Cooper during the May 6, 2004 meeting became available.  The job was not posted or advertised.[7]  Gallagher, however, saw a Road Maintenance II position posted.  Anticipating that this was the vacancy Cooper had stated would result in the promotion of a Road Maintenance

---

[6] Plaintiff alleges that Riggs made the decision to eliminate the solid waste operator positions.  In support of this assertion, Plaintiff cites to the transcript of the May 6, 2004 meeting in which Plaintiff and Gallagher were informed that the solid waste operator positions may be eliminated.  The page cited by Plaintiff was not provided to the Court and therefore this assertion is wholly unsupported.  In contrast, both Riggs and Cooper have provided affidavits stating that the final decision to eliminate the solid waste operator positions was made by the Board of Chavez County Commissioners.

[7] The Road Maintenance I position had been advertised within the prior six-month period.  County policies provide that "public advertisement for positions of the same title is required only one time during each six month period, provided there is a sufficiently large pool of applications received through original advertisement to insure competitive recruitment for such positions that are vacant within the six (6) month period."

I employee and the consequent availability of a Road Maintenance I position, Gallagher applied

for, and obtained, the Road Maintenance I position.[8]  Plaintiff, despite regularly checking internal

job postings, was not aware of the Road Maintenance I opening and did not apply for the

position.  The position, however, required both a CDL license and two years experience operating

heavy equipment, neither of which Plaintiff had.

Plaintiff's last day of employment was June 13, 2004.  On August 2, 2004, Plaintiff filed a

third Charge of Discrimination with the EEOC.  In this charge, Plaintiff checked the boxes for

both "sex" and "retaliation" in the "Cause of Discrimination" section of the charge and Plaintiff's

narrative stated that her claims of gender discrimination and retaliation were based on her

wrongful discharge and the transfer of Gallagher to the unadvertised Road Maintenance I position

even though she was qualified for the position and had seniority.  On September 15, 2004,

Plaintiff received a right to sue letter on this charge.

On August 3, 2004, Plaintiff filed a complaint alleging retaliation in violation of Title VII.

On November 15, 2004, Plaintiff filed a six count Amended Complaint alleging discrimination on

the basis of gender (Count I), retaliation (Count II), breach of contract (Count III), breach of the

implied covenant of good faith and fair dealing (Count IV), violation of substantive and

procedural due process rights (Count V), and an equal protection claim (Count VI).  The Court

subsequently granted summary judgment in favor of Defendant on Plaintiff's substantive due

process claim and limited Plaintiff to the retaliation and gender discrimination claims raised and

exhausted in Plaintiff's January 30, 2004 and July 31, 2003 EEOC charges.  Defendant hereby

---

[8]  The date this position became available, the date Gallagher submitted his application for
this position, and the date Gallagher was offered the position have not been provided to the
Court.

seeks summary judgment on Plaintiff's remaining claims.

## **LEGAL STANDARD**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support the nonmoving party's case, *Celotex,* 477 U.S. at 325.  In such a situation, the moving party is

entitled to judgment as a matter of law "because the nonmoving party has failed to make a

sufficient showing on an essential element of her case with respect to which she has the burden of

proof."  *Celotex,* 477 U.S. at 322.

## LEGAL ANALYSIS

### A.  Count I:  Gender Discrimination

In Count I, Plaintiff broadly asserts that due to her gender, Defendant treated her

differently in the terms and conditions of her employment.  The only gender discrimination claim

Plaintiff has exhausted, however, relates to her layoff and the transfer of Gallagher to the

unadvertised Road Maintenance I position and the Court's analysis will be limited accordingly.

Plaintiff appears to make two related, but distinct, disparate treatment arguments.  First,

Plaintiff contends that the layoff itself was discriminatory because she was terminated and

replaced by a male.  Second, Plaintiff contends that the transfer of Gallagher to the unadvertised

Road Maintenance I position was discriminatory because Plaintiff, who had seniority and was

qualified, was not even informed of the opening.

Disparate treatment claims that are supported by indirect evidence of discrimination are

examined under the familiar burden-shifting analysis first articulated by the Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dept. of*

*Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Under the burden-shifting method, the

plaintiff first has the burden of establishing a *prima facie* case of disparate treatment.  *McDonnell*

*Douglas*, 411 U.S. at 802.  If the plaintiff succeeds in showing such a *prima facie* case, a

presumption of illegal discrimination is created and the burden of production shifts to the

defendant to articulate a legitimate, nondiscriminatory reason for the challenged act.  *Id.*  If the

8

defendant meets its burden by producing a "clear and reasonably specific" explanation for the conduct, *Burdine*, 450 U.S. at 258, the plaintiff may show that the reasons offered by the defendant were merely a "pretext" for discrimination, *McDonnell Douglas*, 411 U.S. at 804. Throughout the process of applying the *McDonnell Douglas* test, courts must remain flexible because the test "was never intended to be rigid, mechanized, or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

### 1. *Prima Facie* Case of Disparate Treatment

To establish a *prima facie* case of disparate treatment, a plaintiff must show that 1) she belongs to a protected class, 2) she suffered an adverse employment action, and 3) the defendant treated similarly situated employees differently. *See Trujillo v. University of Colo. Health Science Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998). There is no dispute that Plaintiff, as a female, belongs to a protected class and that Plaintiff, by being laid-off and by not being transferred into a new position, suffered an adverse employment action. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (an adverse employment action is one that results in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Thus, the first two prongs of the *prima facie* case are satisfied for both the layoff claim and the transfer claim.

For the third prong of the *prima facie* case, Plaintiff must show that similarly situated male employees were treated in a different manner. "To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404

9

(10th Cir. 1997).  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.  A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."  *Id*.  (citation omitted).

Both of Plaintiff's claims falter on the third prong but for different reasons.  Plaintiff has shown that Gallagher is a similarly situated male employee for purposes of the layoff.  Plaintiff has failed to show, however, that Gallagher was treated any differently in the layoff.  Both Plaintiff and Gallagher's positions were eliminated.  Without evidence that similarly situated persons were treated differently, Plaintiff cannot set forth a *prima facie* case of gender discrimination arising from the layoff.

For purposes of her gender discrimination claim based on the transfer of Gallagher to another position, Plaintiff asserts that Gallagher was treated differently because he was promised another position prior to the layoff, was instructed to obtain his CDL license to qualify for a new position, and was transferred into an unadvertised Road Maintenance I position while Plaintiff, who was qualified for the position and had seniority, was not even informed that the position was available.[9]  The evidence reveals, however, that Plaintiff and Gallagher were not similarly situated

---

[9]  The Court notes that the majority of Plaintiff's contentions are unsupported.  Plaintiff has provided no evidence in support of her assertion that Gallagher was advised to obtain his CDL.  Further, Plaintiff admitted that she knew that the Road Maintenance I positions required a CDL.  Similarly, Plaintiff has come forward with no support for her contention that Gallagher was promised another position.  Plaintiff asserts that someone told her that Gallagher told him that Gallagher was going to be given another position.  *See* Plaintiff's Fact No. 17.  The Court can consider only admissible evidence in ruling on a summary judgment motion.  Federal Rule of Civil Procedure 56(e) mandates that evidence offered in opposition to a motion for summary judgment be "made on personal knowledge, shall set forth such facts as would be admissible in evidence,

for purposes of the transfer.

The Road Maintenance I position required both a CDL and two years driving experience. Plaintiff admits that she did not have a CDL or two years driving experience. The County has provided a copy of Gallagher's CDL license, which he obtained prior to the layoff, and his resume indicating that he had the requisite driving experience, thereby establishing that Gallagher was not similarly situated to Plaintiff for purposes of Plaintiff's gender discrimination claim based on the transfer of Gallagher into the Road Maintenance I position.

Plaintiff also argues that she was treated differently from other male employees because, in the past, male employees have been hired for Road Maintenance I positions without a CDL and permitted to obtain a CDL later. Plaintiff identified five persons who she asserts were hired without a CDL--Ron Garcia, Justin Campbell, Harold Ramey, Sid Preston, and Mario Acosta. None of the persons identified by Plaintiff, however, worked in a Road Maintenance I position.[10] In addition, Defendant has submitted affidavits stating that no Road Maintenance I employees have ever been hired without a CDL because Road Maintenance I positions require the driving of

---

and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Hearsay testimony cannot be considered because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." *Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995) (citations omitted).

[10] Ron Garcia is a welder, Justin Campbell and Harold Ramey are diesel mechanics, Mario Acosta is a tire specialist, and Sidney Preston is an automotive mechanic. Furthermore, Defendant has come forward with evidence that three of these persons--Campbell, Preston, and Ramey--had CDL licenses at the time they were hired. Two of the identified persons--Acosta and Preston--were hired without a CDL because there was a lack of qualified applicants with CDL's and because their positions (Tire Specialist and Automotive Mechanic) did not require driving heavy equipment. The final person--Ron Garcia--did not have a CDL when he was hired as a temporary welder while an employee was on medical leave. He did obtain his CDL, however, before he was hired as a permanent welder.

heavy equipment.  Plaintiff has come forward with no evidence to controvert this testimony.[11]

Plaintiff has come forward with no evidence establishing that a similarly situated male employee was treated differently in terms of the layoff or the transfer and Defendant is entitled to summary judgment on Plaintiff's gender discrimination claim.

## B.  Count II:  Retaliation

Title VII makes it unlawful to retaliate against any employee because she has "opposed" any practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  In Count II, Plaintiff asserts that by filing charges of discrimination, she engaged in protected activity under Title VII and that as a result of this protected activity, Defendant took adverse employment actions against her, including, but not limited to, harassment and wrongful discharge.[12]

### 1. *Prima Facie* **Case of Retaliation**

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) Defendant subjected her to an adverse employment action subsequent to the protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action.  *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000).  A meritorious retaliation claim will stand even if the underlying discrimination claim fails.  *See Archuleta v. Colorado Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 487 (10th Cir. 1991).

---

[11]  Even if the County did hire people without a CDL, the Road Maintenance I position required both a CDL and two years experience driving heavy equipment.  Plaintiff provides no evidence that the County ever hired people without the requisite driving experience.

[12] Plaintiff has exhausted administrative remedies and timely filed a complaint only for her retaliation claims based on acts that occurred after August 4, 2003.

Plaintiff easily meets the first prong of the *prima facie* case.  Plaintiff engaged in protected activity when she filed her Charges of Discrimination.  Following the Charges of Discrimination, Plaintiff was suspended twice and terminated.  Under Tenth Circuit law, suspensions and terminations are adverse actions.  *See Roberts v. Roadway Express, Inc*., 149 F.3d 1098, 1104 (10th Cir. 1998) ("[a]ctions such as suspensions or terminations are by their nature adverse").

Having demonstrated both participation in a protected activity and adverse employment actions, Plaintiff now must establish a causal connection between the protected activity and the adverse employment actions.  An inference of retaliation can be based solely on the close temporal proximity between some protected activity and an adverse action.  *See, e.g.*, *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("[a] causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.") (internal quotes omitted);  *McGarry v. Board of County Com'rs of County of Pitkin*, 175 F.3d 1193, 1201 (10th Cir. 1999) ("The requisite causal connection may be shown by producing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.") (internal quotes omitted).

An inference of retaliation based on timing "can only be made, however, where 'close temporal proximity' exists between the bringing of charges and the subsequent adverse action." *Candelaria v. EG & G Energy Measurements, Inc.*, 33 F.3d 1259, 1262 (10th Cir. 1994) (quoting *Smith v. Maschner*, 899 F.2d 940, 948-49 (10th Cir.1990)).  Applying this rule, the Tenth Circuit has held that a one and one-half month time lapse, standing alone, can support an

inference of causal connection. *See Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584,

596 (10th Cir. 1994) (holding that one and one-half month period between protected activity and

adverse action may, by itself, establish causation).  By contrast, a period of three or four months

or more between the protected activity and the adverse action generally is insufficient, standing

alone, to support an inference of causation.  *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209

(10th Cir. 1997) (finding three months insufficient); *Conner v. Schnuck Markets, Inc.*, 121 F.3d

1390, 1395 (10th Cir. 1997) (holding four months insufficient); *Candelaria*, 33 F.3d at 1262

(holding three-year intervening time period insufficient).  "Unless the termination is very closely

connected in time to the protected conduct, the plaintiff will need to rely on additional evidence

beyond mere temporal proximity to establish causation." *Conner*, 121 F.3d at 1395.

　　　Plaintiff filed Charges of Discrimination in July 2003 and January 2004.  Plaintiff was

disciplined in December 2003 and March 2004 and was terminated in June 2004.  The period of

time between the protected activity and the adverse actions ranges from approximately two

months to six months.  While this temporal gap does not require a finding of causation, given

that one adverse action occurred within two months of protected activity and that Plaintiff, who

had never been suspended in her eight years of employment prior to the protected activity, was

suspended twice in four months, the Court will find a causal relationship between the protected

activity and the adverse employment actions.

　　　Plaintiff has presented sufficient evidence for a *prima facie* case of retaliation and the

burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's

termination and discipline.

14

**2.      Legitimate Non-Discriminatory Reason for Adverse Action**

With Plaintiff having presented sufficient facts to establish a *prima facie* case, the burden

shifts to Defendant to produce a "clear and reasonably specific" explanation for its conduct.

**a.      Termination**

Defendant has come forward with evidence that Plaintiff was terminated due to an

economic decision by the County Commissioners to eliminate solid waste transfer operators and

to open the solid waste sites to receipt of all waste, at any time, without fee.  Apparently the

County Commission determined that permitting unrestricted dumping at the designated waste

sites would reduce the amount of illegal dumping of waste along roads and rivers as well as save

the County the expense of paying waste site operators. This is a legitimate, non-discriminatory

reason for the adverse employment action.

**b.      Discipline**

Defendant has submitted evidence that on both occasions Plaintiff was suspended, she

had violated Chavez County Personnel Policies.  In December 2003, Plaintiff was suspended for

insubordination.  In March 2004, Plaintiff was suspended for hostility toward another employee.

This is a legitimate, non-discriminatory reason for the discipline imposed on Plaintiff.

**3.      Evidence that Reason is Pretext**

Once the employer meets its burden of production by coming forward with a

nondiscriminatory reason for the adverse action against the plaintiff, the plaintiff must show that

"there is a genuine dispute of material fact as to whether the employer's proffered reason for the

challenged action is pretextual―*i.e.*, unworthy of belief." *See, e.g.*, *Randle v. City of Aurora,* 69

F.3d 441, 451 (10th Cir. 1995).  Pretext can be shown by "'such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)) (further citation omitted).  Of course, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).

In this case, Plaintiff has come forward with no evidence to contradict Defendant's explanation.  The position of solid waste operator was eliminated.  While Plaintiff contends that the position was eliminated to retaliate against her for her prior complaints, she has come forward with no evidence in support of her position or to contradict Defendant's contention that the County's decision was based on economics.  Similarly, the discipline imposed on Plaintiff was well-documented and either uncontested by Plaintiff or upheld by a third party.  In short, Plaintiff has not demonstrated any  "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the County's proffered reasons for the adverse actions taken against her such that a reasonable factfinder could find that the County's explanation is a pretext for intentional discrimination.  Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## C.  Count III:  Breach of Contract

Plaintiff's breach of contract count is based on the alleged breach of two separate contracts--an implied or express employment contract and the Settlement Agreement.

### 1.  Employment Contract

Plaintiff contends that her employment with Defendant was governed by express and implied employment contracts and that Defendant breached these agreements by not properly posting the June 2004 Road Maintenance I job opening.  The Court need not determine if Defendant followed appropriate procedures in posting the job opening because Plaintiff's breach of contract claim fails on other grounds.  As discussed above, Plaintiff was not qualified for the Road Maintenance I position.  As Plaintiff was not qualified for the position, she did not suffer any injury from Defendant's alleged failure to follow its own procedures in advertising the position.[13]  *See Jaynes v. Strong-Thorne Mortuary, Inc.*, 124 N.M. 613, 618, 954 P.2d 45 (1997) (affirming the trial court's grant of summary judgment since there were no damages arising from the breach of the contract); *Joplin v. Southwestern Bell Telephone Co.*, 753 F.2d 808 (10th Cir. 1983) (upholding trial court's determination that defendant was entitled to summary judgment because plaintiff was not damaged by breach of contract).

**2.  Settlement Agreement**

Plaintiff contends that Defendant breached the Settlement Agreement by subjecting Plaintiff to additional discrimination or retaliation.  As discussed above, Plaintiff has not come forward with evidence demonstrating that she was subjected to  discrimination or retaliation.

---

[13]  In addition, Plaintiff's breach of employment contract claim is potentially undermined by Plaintiff's contention that she was not an employee at the time the hiring decision for the Road Maintenance I position was made.  *See* Plaintiff's Response at p. 21 ("Plaintiff could not grieve the failure to hire her into the Road Maintenance I position, because Plaintiff was no longer an employee.").  The date the position opened, the date Plaintiff contends the position should have been posted, and the date the position was filled, have not been provided to the Court.  If, however, Plaintiff was not an employee at the time she believes the position should have been posted, then she was not covered by an express or implied employment contract and, therefore, there could have been no breach of the alleged contract.  The Court need not resolve this question, however, because Plaintiff's breach of contract claim fails on other grounds.

Consequently, there was no breach of the Settlement Agreement on these grounds.

**D.  Count IV:  Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing based on Defendant's continued discriminatory and retaliatory treatment of her after the parties entered into the Settlement Agreement.  Given the Court's finding that Plaintiff has failed to demonstrate any discriminatory or retaliatory treatment after the parties entered into the Settlement Agreement, this claim must fail.

**E.  Count V:  Procedural Due Process**

In her Complaint, Plaintiff asserts a violation of her Constitutional procedural due process rights.[14]  The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  The Fourteenth Amendment does not create property or liberty interests.  Rather, Plaintiff's right, if any, must arise out of an independent source, such as state law.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  "To assess whether an individual was denied procedural due process, district courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996) (citations and

---

[14]  Plaintiff brings her claims under 42 U.S.C. § 1983, which provides civil redress for deprivation of constitutional rights by persons acting under color of state law.  *See* 42 U.S.C. § 1983.  Section 1983 creates no substantive rights, but rather is only a remedy against those who, acting under color of law, violate rights secured by federal statutory or constitutional law. *See, e.g., Baker v. McCollan*, 443 U.S. 137, 144, n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995).

internal quotation marks omitted); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

Plaintiff has failed to present any argument in support of her procedural due process claim and could be considered to have abandoned this claim. *See, e.g., United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (court is not required to fashion plaintiff's arguments for her where her allegations are merely conclusory in nature and without supporting factual averments). However, to the extent the Court can discern the basis for Plaintiff's claim, the Court will attempt to address it on the merits.

First, Plaintiff appears to contend that her procedural due process rights were violated because she was not apprised of the nature of the allegations brought against her that resulted in the three-day suspension in January 2004. The Supreme Court has stated that an employee is entitled to written or oral notice of the charges against her sometime before a hearing is held. *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495. It is undisputed that Plaintiff was provided a notice on December 18, 2003, that stated, in part, that a predisciplinary hearing had been set for December 22, 2003, to "determine if your actions the morning of December 10th, 2003 constitute a violation of Chaves County personnel policy" and that cited the relevant policy provisions.[15] This statement provides adequate notice of the charges against Plaintiff to satisfy procedural due process requirements. Notably, Plaintiff did not allege during the hearing that she had not been apprised of the charges against her and did not appeal the discipline imposed or the process by which the discipline was imposed.

---

[15] The Court's analysis of this claim is hampered by the fact that neither party provided a copy of this notice to the Court. The part of the notice quoted was read at Plaintiff's deposition. *See* Plaintiff's Deposition at pp. 77-78.

In addition, there is no evidence that the alleged failure to apprise Plaintiff of the allegations prior to the meeting prevented Plaintiff from responding to the issues.  When an employee does not need time to prepare in order to respond to the charges, courts have held that there need be no delay between the time the notice is given and the time of the hearing.  *See, e.g., Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989) ("*Loudermill* does not imply that, in conducting the pretermination hearing, there must be a delay between the 'notice' and the 'opportunity to respond' accorded to the public employee.");  *Riggins v. Board of Regents of the University of Nebraska*, 790 F.2d 707 (8th Cir. 1986) (oral notice received at hearing sufficient);  *Brasslett v. Cota*, 761 F.2d 827, 836 (1st Cir. 1985) (same).  Plaintiff does not allege, much less provide evidence, that the alleged failure to provide notice of the charges against her prior to the hearing prevented her from responding to the charges.

There is evidence in the record that Plaintiff was provided notice of the charges against her several days prior to the predisciplinary hearing.  Furthermore, even assuming that Plaintiff was not provided notice of the charges against her until the hearing, Plaintiff does not argue, much less provide any evidence, that she was unable to meaningfully respond to the charges against her without more notice.  Accordingly, Plaintiff's procedural due process challenge to her predisciplinary hearing must fail.

Second, Plaintiff asserts that denying her the use of her chain of command[16] to complain about the work environment and the alleged retaliation constitutes a procedural due process

---

[16] While neither of the parties has provided the Court with specific information on the County's "chain of command" policy, both parties seem to agree that the County has a chain of command policy that requires employees to first raise a grievance with his or her immediate supervisor.  If that supervisor does not adequately address an employee's concerns, the employee may elevate the grievance to the next level supervisor.  *See* Plaintiff's Deposition at p. 40-41.

violation.  This claim is based on an incident in December 2003, in which Plaintiff sent her

immediate supervisor, Rusty Gray, a memo detailing her complaints about the work place and

about the County's perceived failure to comply with the Settlement Agreement and stating that

she would be making an appointment to speak to Stan Riggs, the person at the top of her chain

of command.[17]  Plaintiff copied the memo to all of the supervisors in her chain of command but

did not discuss the contents of the memo with any of them.

Plaintiff, assuming that the provision of a written memo to everyone in her chain of

command satisfied her obligation to raise grievances through the chain of command, scheduled a

meeting with Stan Riggs for the following Wednesday.  When Plaintiff arrived for the meeting,

however, Gray and Acosta confronted her about the memo, allegedly yelling and screaming, and

informed her that her meeting with Riggs had been canceled because Plaintiff had not discussed

the issues raised in her memo with them first.  Acosta subsequently issued Plaintiff a letter of

reprimand for not following chain of command when she attempted to meet with Riggs without

first speaking with her direct and intermediate supervisors.  Plaintiff contends that not being

permitted to air her grievances with the person at the top of her chain of command prior to

discussing them in person with others in her chain of command constitutes a procedural due

process violation.

Plaintiff has not cited, and the Court has not located, any legal support for the

proposition that an employee has a protected liberty or property interest in being able to raise her

grievances with her highest level supervisor prior to discussing these grievances with her lower

_____

[17]  Once again, neither party has provided a copy of this document to the Court.
Therefore, the Court's description of the document is based solely on deposition testimony.

21

level supervisors.  Absent a liberty or property interest, there can be no procedural due process violation.

**F.  Count VI:  Equal Protection Claim**

Plaintiff brings two equal protection claims under two alternative theories.  First, Plaintiff alleges that she was treated differently from other male employees in the terms and conditions of employment.  Second, Plaintiff alleges that she and Gallagher were treated differently after the layoff in that Gallagher was transferred into a new position and she was not.  Plaintiff alleges these violations of the Equal Protection Clause based on two theories: 1) that she was treated differently as a female and 2) that she was treated differently as a "class of one."[18]

"The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).  To sustain a claim under the Equal Protection Clause, Plaintiff must provide evidence that she was treated differently from others who are similarly situated to her, and that the acts forming the basis of the claim were motivated by a discriminatory purpose.  *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003).

As discussed above, Plaintiff has failed to come forward with evidence to support her

_____

[18] As another example of the inadequate briefing in this case, Plaintiff cites an unpublished Tenth Circuit case in support of her class-of-one claim on the grounds that there are no published Tenth Circuit cases on the issue.  To the contrary, there are several published Tenth Circuit cases on class-of-one claims.  *See Orr v. City Of Albuquerque*, 417 F.3d 1144 (10th Cir. 2005); *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836 (10th Cir. 2005); *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004); *Bartell v. Aurora Public Schools,* 263 F.3d 1143, 1149 (10th Cir. 2001).

claim that she and Gallagher were treated differently in the layoff or that she and Gallagher were similarly situated for purposes of a transfer into the Road Maintenance I position.  Thus, the Court need only consider Plaintiff's equal protection claim based on the alleged disparity in the terms and conditions of her employment prior to the layoff.

As an initial matter, Defendant asserts that it cannot be held liable under Section 1983 based solely on the fact that it employed an alleged tortfeasor.[19]  Plaintiff concedes that she cannot predicate her claim against the County based on a *respondeat superior* theory.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Plaintiff contends, however, that Riggs, as County Manager, was a final policymaker such that the County should be held liable for Riggs' unconstitutional actions.

A county can be held liable if "'the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'" *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1189 (10th Cir. 2003) (quoting *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001)) (emphasis added).  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis in original).

---

[19]  Plaintiff's Complaint is brought solely against Chavez County.  No individual defendants have been named.  In her response, Plaintiff requests leave to amend her complaint to add individual defendants.  This request, which must be made by motion and supported by a brief, is not properly before the Court.  Furthermore, Plaintiff's claims would suffer from the same defects even if individual defendants had been named.

An "official policy" can be established by showing that the highest authority for the County made the challenged decision.  *See Randle*, 69 F.3d at 447.  As the Tenth Circuit has explained:

> In *Pembaur v. City of Cincinnati*, the Supreme Court held that the search of a doctor's office without a warrant gave rise to municipal liability because the County Prosecutor was acting as a "final decisionmaker" when he ordered the illegal search. 475 U.S. 469, 484-85, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Justice Brennan explained that if an official, who possesses final policymaking authority in a certain area, makes a decision-even if it is specific to a particular situation-that decision constitutes municipal policy for § 1983 purposes. *Id*. at 481  . . . Hence, such an act can be understood as an act  "of the municipality" which the municipality "officially sanctioned or ordered." *Id*. at 480, 106 S.Ct. 1292.

*Randle,* 69 F.3d at 447.

Whether an individual is a final policymaker for purposes of § 1983 liability "is a legal issue to be determined by the court based on state and local law."  *Dill v. City of Edmond, OK*, 155 F.3d 1193, 1210 (10th Cir. 1998).  Riggs' status as a final policymaker turns on whether he had the authority to establish official County policy on the particular issues raised by Plaintiff. *See McMillian v. Monroe County, Ala*., 520 U.S. 781, 785, 117 S.Ct. 1734, 1737 (1997) (courts must determine whether officials are policymakers for the municipality "in a particular area, or on a particular issue").  In making this determination, the Court considers whether (1) the official's discretionary decisions are "constrained by general policies enacted by others;" (2) the decisions are reviewable by others; and (3) the decisions were within the official's authority. *Randle*, 69 F.3d at 448.

The parties have not provided the necessary information for the Court to determine whether Riggs had the authority to establish official County policy on the particular issues raised

by Plaintiff, whether Riggs was constrained by general policies enacted by others, or whether

Riggs' decisions were reviewable by others.  Even assuming Riggs had the authority Plaintiff

claims he did, however, Plaintiff's claims still fail.

Plaintiff's equal protection claims, whether based on a gender class or a class of one, fail

for the same reason:  Plaintiff has not come forward with any admissible evidence that she was

treated differently than Gallagher, the only similarly situated employee.  Plaintiff complains that

her supervisors, particularly Gray, supervised her more closely than Gallagher and required her

to adhere to County dumping policies more stringently than Gallagher.  Plaintiff, however,

presents no admissible evidence in support of these statements.

For example, Plaintiff complains that Gray supervised her closely, including

surreptitiously "spying" on her one day to see if she was complying with County dumping

policies and spending an entire day supervising her at her site.  Plaintiff does not have any

evidence, however, that Gray did not supervise Gallagher the same way:

> Q.  Now you don't know whether Rusty watched Gayland Gallagher in the same
> way or not, do you?
>
> A.  From what Angelo Gurrule--I am not sure how you spell that--he was a
> former dumpster driver, and from what he had told me, no, they weren't watching
> Gayland, and I have had people observing Gayland and no, he wasn't getting the
> same kind of micromanaging.

Plaintiff's Deposition at p. 23.  No statement from Gurrule, however, has been provided to the

Court.

Later in her deposition, Plaintiff clarified that the other person she relied upon to observe

Gallagher was her friend, Curtis Stinnett.   Plaintiff submitted a signed, but unsworn, statement,

from Stinnet stating that he observed Gallagher for fifteen minutes on one day and that during

25

this fifteen-minute period, Gallagher did not go to the dumpsters to observe customers'

unloading garbage as required by County dumping policies.  The fact that Gallagher was not

complying with County dumping policies during one fifteen-minute period when he was

apparently unsupervised is insufficient to establish that the County treated Plaintiff and Gallagher

differently in the terms of their employment.

Plaintiff also testified in her deposition that Gallagher told her that he took some

unacceptable waste at his dumpster site.  Plaintiff does not present any evidence that a supervisor

was aware that Gallagher took unacceptable waste or any evidence that Gallagher was, or was

not, disciplined for taking unacceptable waste.

> Q.  And you don't have any idea whether he was ever reprimanded or
> admonished or anything for accepting unacceptable waste?
>
> A.  I know he wasn't ever reprimanded.
>
> Q.  And how do you know that?
>
> A.  Because I know.  If he was reprimanded, it was verbally, and if he was
> reprimanded, I doubt very seriously if it's even in he personnel file, and if he was
> reprimanded, I am sure that--well, Gayland Gallagher, as far as I know, is still in
> town, so, you know, that's a good person to ask.

Plaintiff's Deposition at p. 33.  In fact, Plaintiff presents no evidence of Gallagher's disciplinary

record, no testimony from Gallagher (or anyone else) regarding any discipline imposed upon him,

and no evidence regarding how Gallagher was supervised.[20]

Plaintiff also states that she was required to deposit the money collected from her site

every day at the treasurer's drop box but that Gallagher was not required to do so.  Plaintiff's

---

[20]  Interestingly, Plaintiff notes that in a policy meeting held at the Road Department,
Gallagher complained about having to follow the rules.  Plaintiff's Exhibit 2 at p. 28.

deposition testimony reveals, however, that both she and Gallagher were required to make daily deposits. *See* Plaintiff's Deposition at p. 70 ("Q: You are saying Mr. Gallagher was not required to drop money off? A: He was required to do so, but he didn't."). Plaintiff asserts that Gallagher told her that he occasionally deposited the money that he collected over the weekend early Monday morning before the drop box was emptied. Plaintiff admits, however, that Gray was unaware of this practice. *See* Plaintiff's Deposition at 73 ("Q: And do you know, was that brought to Rusty's attention? A: It wasn't brought by me. I don't think anybody knew about it."). The fact that Gallagher circumvented certain rules with which Plaintiff complied does not establish disparate treatment by their supervisors in the absence of evidence that their supervisors were aware of the circumvention.

Finally, Plaintiff submits a petition allegedly signed by over forty of her customers at the South Site that states, in relevant part, that "[w]e have dumped trash [at the South Site] several times when Miss Thompson is off duty and the male replacements that fill in for her never left the office area to supervise the unloading of our trucks." Not only is this document unverified but there is no evidence that the unidentified males who "fill in" for Plaintiff are similarly situated employees. *See, e.g., Czerska v. United Airlines, Inc.*, 292 F.Supp.2d 1102, 1114 (N.D.Ill. 2003) (employee, whose assignment was temporary, was not similarly situated to permanent employee). Absent evidence that any of the unidentified males are similarly situated to Plaintiff, this petition, even if admissible, provides no support for Plaintiff's equal protection claim.

In conclusion, Plaintiff submits testimony and evidence regarding how she was supervised and disciplined but insufficient evidence that Gallagher--the only similarly situated employee-- was supervised and/or disciplined differently. Without such evidence, Plaintiff's equal protection

claim fails.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment,

filed September 12, 2005, **[Doc. No.  44]**, is **GRANTED.**

Dated this  14th day of February, 2006.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
        Gilbert Vigil, Esq.

Attorneys for Defendant:
        Elizabeth L. German, Esq.